# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| DUSTIN SOURS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action |
| vs. ) | No. 08-05025-CV-S-JCE-SSA |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **O R D E R**

Plaintiff is appealing the final decision of the Secretary denying his application for disability insurance benefits and supplemental security income ["SSI"] benefits under Title II and XVI of the Act, 42 U.S.C. §§ 401, 1381 et seq. Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), this Court may review the final decisions of the Secretary. For the following reasons, the Secretary's decision will be affirmed.

## Standard of Review

Judicial review of a disability determination is limited to whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g); e.g., Rappoport v. Sullivan, 942 F.2d 1320, 1322 (8th Cir. 1991). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). Thus, if it is possible to draw two inconsistent positions from the evidence and one

1

position represents the Agency's findings, the Court must affirm the decision if it is supported on the record as a whole. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A). Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990). In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment. Id. Once a claimant demonstrates that the impairment is so severe as to preclude the performance of past relevant work, the burden shifts to the Secretary to prove some alternative form of substantial gainful employment that claimant could perform.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well settled. The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing the reasons for discrediting that testimony, and discussing the factors set forth in Polaski. The ALJ must give full consideration to all of the relevant evidence on the Polaski factors and may not discredit subjective complaints unless they

are inconsistent with the evidence in the record as a whole.  Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994).

## Discussion

Plaintiff filed for a claim for Social Security benefits in 2003, which an ALJ denied in 2005, with the finding that he could perform his past relevant work. The case was remanded by the Appeals Council for further consideration regarding plaintiff's musculoskeletal condition, his subjective complaints, the nature and severity of his impairments, and his maximum residual functional capacity.  If warranted by the expanded record, the ALJ was instructed to obtain supplemental evidence from a vocational expert to clarify the physical demands of plaintiff's past relevant work and the effect of the assessed limitations on his occupational base. [Tr. 427].

Plaintiff, who was 24 years old at the time of the supplemental hearing before the ALJ, has an eighth grade education.  He alleges that he is disabled because of a club foot, herniated disc, and sarcoidosis.  He has past relevant work as a fast food services manager, stock clerk, and fast food worker.

At the supplemental hearing before the ALJ, plaintiff testified that he is 5 feet, 11 inches tall and weighs 350 pounds.  His weight fluctuates, with his lowest weight being around 330 pounds.  He quit school when he was 16, and has some trouble reading, although he can read newspapers for the most part.  He testified that he was in special education, and that he had a separate aide in his regular classes, where he made good grades.  Plaintiff testified that he alleged an onset date of February 28, 2003, because he had herniated two discs in his back.  He thought that might have happened as a result of a car accident, but then stated that the accident happened in 2001.  During that two year period, the pain got really severe in his back, and he

could not work anymore. In 2003, he was hospitalized for seven days with sarcoidosis in the left lung. He could not go back to work for two weeks, although he is not alleging that he has a breathing problem that interferes with his ability to work. When he did go back to work, he had severe back pain, and could not stand up straight. He went back to the hospital, and after an MRI, he was diagnosed with two herniated discs and a bulging disc, plus a pinched sciatic nerve. He testified that he had pain running down his left leg into his ankle, which he still has, that his pain is now in his right leg as well, and that he has numbness in his right foot. He also has spinal stenosis. Plaintiff was born with a club foot, and testified that he has had trouble with his foot since he was born. He is supposed to wear special shoes or a brace, but Medicaid will not pay for them. He has to wear a high top shoe because of his ankle. When he was a child, he wore special shoes. The diameter of his calf is smaller on his left leg, although his leg is not shorter.

Plaintiff described his back pain during the past four years as being severe pain in the buttocks, going down into his ankle. He has numbness on the top of the left thigh. When he tries to do house work involving bending or lifting, his back hurts. Plaintiff testified that he has low back pain all the time; on a scale on 1-10, it is usually at a 6. If he does any work, like vacuuming or other household chores, it could go up to 10. He is able to do some type of chore for 10 to 15 minutes. Sitting or standing aggravates his back. He can probably sit 15-20 minutes, depending on the chair, and could probably stand for 15-30 minutes. He has problems with his left leg giving out, and has fallen five or six times. He also falls because of his clubfoot if he has overworked it. If he has stood or walked too long, he has a burning, throbbing, sharp pain in his foot. He has had throbbing pain in his left foot a few times a week for all his life, but it has worsened in the past four years. He has swelling if he walks too far or stands too long. He

4

elevates his foot three or four times a day if needed, depending on his activities. He also uses hot and cold packs. When he elevates his foot, he uses a recliner or lies on his bed with pillows underneath his legs. He usually will lie down three or four times on a typical day, and maybe sit in the recliner five times a day for 30 minutes or so. He takes Naproxen, which helps the swelling, but upsets his stomach for about 45 minutes or longer if he doesn't eat. He's never been prescribed an assistive device like a cane, but thinks he could use one because he has difficulty balancing, given that his feet aren't straight.

Plaintiff testified that also has carpal tunnel syndrome, which started in 2004; he cannot hold onto small things without causing his hands to cramp, and writing causes him pain. He can use his hands a few minutes before he has to stop and pump or shake them. He could not use his hands for more than two to three hours in an eight-hour day because he would drop things and his pain would increase. He testified that the doctor he saw wanted him to have carpal tunnel surgery. He has been treated for high blood pressure since 1999, which causes headaches. He takes medication for the blood pressure, but it does not control the problem. Plaintiff also has shortness of breath, which started after he had the lung problem in 2003. It bothers him if he is working around the house or in the yard. Plaintiff also gets lightheaded if he works sometimes in the house. Additionally, he has a hiatal hernia in his stomach, diagnosed in 2004, which he has not had repaired. This causes bad heartburn and stomach pain. He needs to lie on a heating pad a couple of times a day because of stomach pain, for a few minutes to thirty minutes. Plaintiff testified that he does have some good days where he can move around a little better than usual and is not in so much pain. On bad days, he will lie in bed for three hours, then will have

to get up because his back hurts. When his feet hurt, he can't walk really well. He is slower than he used to be.

Regarding his alleged mental problems, plaintiff testified that he has been treated for depression and ADD. These conditions cause him to be sad and to anger easily. That has caused him problems with previous jobs because if a "customer makes me mad, I might go off on them." [Tr. 724]. He also loses concentration easily. Sometimes paperwork causes him problems. When he worked at Burger King, he had to do paperwork, for which he needed help. He would have to use a calculator or call his mother to help him spell words. His medications cause him to be lightheaded or have headaches, and cause drowsiness.

The ALJ posed a hypothetical to the vocational expert that included a 19-year old with plaintiff's education and work history, with the ability to stand or walk for two hours out of an eight hour day, sit for six hours, and who was limited in pushing and pulling involving his lower extremities. It also included the ability to occasionally climb, kneel, crouch, crawl or stoop, and to be unlimited in the ability to handle, finger, and feel. The vocational expert testified that the individual could perform sedentary unskilled work, such as a final assembler or table worker. When asked by plaintiff's counsel to modify the hypothetical where the person could only sit or stand for 15 to 30 minutes, would need to recline because of pain and swelling in the legs at least three times a day at random for 15 to 30 minutes at a time, the vocational expert testified that such an individual could not perform either of those two jobs. Similarly, if the person could only work at half speed and/or could only perform a limited range of reaching, handling, fingering and feeling, the person could not perform those jobs.

After the supplemental hearing, the ALJ found that plaintiff has not engaged in substantial work activity since February 28, 2003, and only met the insured status requirement until September 30, 2004. He found that the medical evidence established that plaintiff suffers from the following severe impairments: "degenerative disc disease of the lumbar spine; bilateral clubbed feet, left worse than right; carpal tunnel syndrome (CTS); obesity; and a hiatal hernia . . . ." [Tr. 21]. Regarding mental impairments, the ALJ found that the medical records and record as a whole did not show that the impairments, considered singly or in combination, caused more than minimal limitations in plaintiff's ability to work. The ALJ found that plaintiff's "statements about intensity, persistence, or functionally limiting effects of pain are not substantiated by the objective medical evidence and the claimant's statements are not credible based on a consideration of the entire case record." [Tr. 30]. He found that plaintiff had the residual functional capacity ["RFC"] to perform sedentary work, except that he can stand/walk at least two hours during an eight-hour workday; can sit for a total of about six hours; has limited pushing/pulling capacity with his lower extremities; should only occasionally perform postural tasks; and can at least perform unskilled work. The ALJ found that plaintiff is not able to perform any past relevant work, but has the capacity to perform a limited range of unskilled sedentary work, such as final assembler or table worker. Therefore, it was the ALJ's finding that plaintiff has not been under a disability, as defined by the Act.

Plaintiff contends that the ALJ's decision should be reversed because he erred by failing to properly assess his mental residual functional capacity; failed to give proper weight to the opinion of the treating physicians; erred in his credibility analysis; and erred in his RFC finding.

Turning first to plaintiff's contention that the ALJ erred in failing to properly assess his mental impairments, having fully reviewed the record, the Court finds that there is substantial evidence in the record as a whole to support the ALJ's decision that plaintiff does not have a severe mental impairment. Initially, it should be noted that although plaintiff now contends that he suffers from disabling depression and Attention Deficit Hyperactivity Disorder ["ADHD"], he did not allege any mental impairments in his initial application for disability benefits. Not only did plaintiff not allege depression and ADHD as an impairment when he filed his claim for benefits, he has received minimal treatment in the form of prescription medication for these conditions. The fact that a claimant has been prescribed anti-depressant medication is inadequate to establish that he is disabled. Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989).

The record indicates that plaintiff was referred by his treating physician, Dr. Younkers, after he complained of depression, to Louise Hansen, a registered nurse at the Ozarks Center, who saw him about once a month from 2004 to 2007. Ms. Hansen was considered to be a treating source by the ALJ. She indicated that he suffered from a major depressive disorder, recurrent, in partial remission, and a history of drug and alcohol abuse, currently in remission. Her earlier notes also indicated a diagnosis of ADHD, although this condition is not mentioned later in her notes. Ms. Hansen continued and/or changed plaintiff's prescriptions for depression and sleeping. Her treatment notes consistently indicated that plaintiff was doing fairly well, was cognitively intact, his mood was good, and his affect was appropriate. There was no suicidal ideation or evidence of hallucinations or delusions noted in the record. For the most part, plaintiff appeared to discuss situational problems, such as dealing with his mother or

8

grandmother or a neighbor. It is clear from Ms. Hansen's treatment notes that plaintiff reported doing fairly well, that medications were helping, and that plaintiff's depression was in partial remission.

Plaintiff also saw Dr. Brooks over a two-day period for a consultative psychological evaluation, at the request of plaintiff's counsel. The ALJ did not afford great weight to Dr. Brooks' opinion because she only saw plaintiff on one occasion, and was therefore not deemed to be a treating source, was only provisionally licensed, relied heavily on plaintiff's subjective complaints, and did not have the benefit of all the information regarding plaintiff's impairment. It was also noted that her assessment was inconsistent with Ms. Hansen's most recent treatment notes. Further, the ALJ found that Dr. Brooks' assessment was refuted by plaintiff's past work history in which he performed semi-skilled and skilled work tasks without any significant problems due to mental impairments.

To the extent that the ALJ gave some weight to the opinion of an agency consultative psychologist, Dr. Burstin, the Court finds that this was supported by substantial evidence in the record, given that Dr. Burstin's opinion was consistent with the medical evidence, particularly Ms. Hansen's progress notes, which indicated that his depression was in partial remission. Dr. Burstin found that plaintiff was mildly restricted in daily living, maintaining social functioning, and maintaining concentration and pace; that the "mental status reports were essentially asymptomatic. . . . and were not severely limited by mental factors." [Tr. 537]. The Court finds, after careful review, that his opinion is more consistent with that of Ms. Hansen than Dr. Brooks, and was properly afforded some weight.

9

By contrast, Dr. Brooks' opinion, which indicates severely disabling mental impairments, is not consistent with the medical record as a whole, particularly the records of the treating source, Ms. Hansen. Although Dr. Brooks completed a Medical Source Statement-Mental, in which she opined that plaintiff had a number of marked limitations in areas such as his ability to understand and remember detailed instructions, or to complete a normal workday or workweek without interruption from psychologically-based symptoms, that assessment is simply unsupported by the record, including plaintiff's work history and his own testimony. It should be noted that Dr. Brooks also concluded that with continued medication and therapy, it is likely that plaintiff "could have significant improvement in managing his mood within 12 to 18 months." [Tr. 624]. Additionally, despite plaintiff's contentions, it was not error for the ALJ to fail to order a consultative psychological examination because the record was adequate, as a whole, to support a finding that his mental condition was not a severe impairment.

Although plaintiff also contends that the ALJ erred in the weight he gave to the GAF assessments of 55, given by Ms. Hansen and Dr. Brooks, it is clear that an ALJ is not required to base an alleged mental impairment solely on a GAF score suggesting moderate symptoms. In this case, the GAF score given by Ms. Hansen was an initial assessment; thereafter, plaintiff's improvement with medication is repeatedly documented in her treatment records, as well as her opinion that his depression and the ADHD were in partial remission. The record indicates, moreover, that plaintiff demonstrated his ability to work, particularly in his last job, which lasted 14 months at Burger King, and involved supervising other employees. The record also contains his reports of doing better with medication.

Having fully reviewed the record, the Court finds that there is substantial evidence in the record as a whole to support the ALJ's conclusion that plaintiff's mental health problems did not constitute a disabling impairment. The Court finds that the ALJ did not err in his findings regarding plaintiff's alleged mental impairments, and notes additionally, that the ALJ did consider some mental impairment when he limited him to simple unskilled work.

Regarding the ALJ's assessment of plaintiff's RFC, it is the finding of the Court that the ALJ did not err in his credibility analysis and RFC findings. Initially, it should be noted that a myriad of medical evidence indicates that plaintiff suffers from herniated discs in his lumbar spine, as well as club feet, which cause pain, limping, and decreased range of motion in his spine and ankles. Cervical spine x-rays only showed some degenerative disc disease, and range of motion in his neck and upper extremities has been unremarkable, with upper extremity muscle strength unimpaired. The nerve conduction study was consistent with mild carpal tunnel syndrome, left worst than right, but with no denervation or signs of radiculopathy/neuropathy. Plaintiff's obesity was found to be at a Level III by the ALJ, and he concluded that his obesity, "alone or in combination with his co-existing physical impairments significantly limits his ability to do basic work activities." [Tr. 22]. The record indicates that the ALJ did consider this condition in that he found that his Level III obesity, in combination with his co-existing physical impairments, significantly limited his ability to perform basic work activities. [Tr. 22]. The ALJ found, however, that plaintiff could perform sedentary work. It was noted by the ALJ that plaintiff presented no evidence indicating that he had any significant limitation arising from obesity, nor did any physicians note that he had any limitations arising from obesity.

11

Specifically regarding the carpal tunnel syndrome, the record does not support a finding that this condition was disabling. Although objective tests were consistent with mild carpal tunnel syndrome, there was no objective evidence to support the degree of impairment alleged. Dr. Behm found that he had only mild carpal tunnel syndrome. An electromyography/nerve conduction study failed to show a positive Phalen or Tinel sign, which are generally significant for a finding of severe carpal tunnel syndrome. According to the notes of Dr. Robbie, who performed the nerve conduction study, plaintiff had mild bilateral carpal tunnel syndrome, slightly worse on the left side; there was no evidence of denervation, radiculopathy or neuropathy. The doctor noted that although plaintiff complained of numbness, he denied neck pain or any weakness in the arms. While there was also a notation by Drs. Nichols and Younkers regarding numbness in plaintiff's hands when they were used, there was not support in the record as a whole to support plaintiff's testimony at the supplemental hearing that he could not grasp or hold anything without risk of dropping it, nor was there any indication that he made this complaint to any of his doctors. Additionally, although the ALJ did not assess any limitations because of carpal tunnel syndrome, the record indicates that surgery was suggested to him in 2004 if his symptoms progressed, and he has not availed himself of surgery. Additionally, the medical records of Drs. Nichols, his treating orthopedic doctor, do not contain complaints about his hands or wrists. [Tr. 566-94]. Although objective tests were consistent with mild carpal tunnel syndrome, there was not a level of treatment to support a finding of a disabling upper extremity impairment.

The law is clear that "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Homstrom v. Massanari, 270 F.3d 715, 721 (8th Cir.

12

2001). While an ALJ who discredits a claimant's subjective complaints must make an express credibility determination explaining the reasons for doing so, Singh v. Apfel, 222 F3d 448, 452 (8th Cir. 2000), the law does not require that the ALJ explicitly discuss each factor. Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir. 2005). Rather, it is sufficient if the ALJ acknowledges and considers the factors before discounting subjective complaints. Id. at 791.

Regarding the ALJ's credibility assessment in this case, the Court finds that there was substantial evidence in the record to support the credibility finding. The ALJ noted that plaintiff did not avail himself of physical therapy, even though he received a 50 % reduction in back and leg pain when he did participate in such therapy, and therefore, failed to follow recommended treatment, which suggests that his pain was not as severe as alleged. He also observed that although plaintiff was offered surgical options for his low back, club foot, and carpal tunnel syndrome, he opted for conservative treatment. Further, he had worked before his alleged onset date, despite having club feet, which were still at about the same level of severity as when he worked.

After a careful review of the record as a whole, the Court concludes that there is substantial evidence to support the decision of the ALJ. Given that the credibility of a claimant's testimony is primarily for the ALJ to decide, the Court finds that there is a sufficient basis to support the ALJ's credibility determination, which was based on the ALJ's thorough review of the objective medical evidence, the opinions and observations of physicians of record, and plaintiff's own testimony. Further, the ALJ relied on the opinion of a vocational expert who found that, based on the evidence, plaintiff could not return to his past relevant work, but that

there were unskilled sedentary jobs that were available, which he could perform. As a whole, the Court finds that the ALJ did not err in finding that plaintiff was not entirely credible.

"The Commissioner must determine a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his] limitations." McGeorge v. Barnhart, 321 F .3d 766, 767 (8th Cir. 2003). It is the duty of the ALJ to determine a claimant's RFC, based on all the relevant evidence. See e.g., McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000); Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995).

In this case, it is clear that the ALJ properly discussed all of the evidence prior to determining plaintiff's RFC; that he did note his complaints of pain and included those in his assessment of his RFC; and that he did fully consider the combination of impairments that he found to be credible and based on the record. Therefore, because the ALJ's RFC determination was based on all of the credible evidence in the record, the Court finds that the ALJ did not err in the RFC finding.

The Court finds that there is substantial evidence in the record as a whole to support the ALJ's RFC. Plaintiff contends that the ALJ erred in his RFC finding because he did not give controlling weight to the opinion of Dr. Dowell, a podiatrist, whom he claims is a treating physician. While a treating physician's opinions are ordinarily to be given substantial weight, they must be supported by medically acceptable clinical or diagnostic data, and must be consistent with substantial evidence in the record. Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999); Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004). The ALJ may reject the

opinion of any medical expert if it is inconsistent with the medical record as a whole. See Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995).

As noted by defendant, Dr. Dowell only saw plaintiff one time before the hearing, and whether he is actually a treating physician is arguable. The record indicates, however, that the ALJ did give weight to Dr. Dowell's opinion as an acceptable medical source regarding plaintiff's club feet, by finding that he could not stand/walk for more than two hours in an eight-hour workday. The doctor indicated in the Medical Source Statement-Physical that plaintiff could stand and walk less than one hour in an eight-hour work day, and that he could sit for four hours in an eight-hour workday. The ALJ's finding that he was limited to sedentary work, which involves only occasional walking and standing, indicates that the ALJ did give weight to Dr. Dowell's assessment regarding his ability to walk and stand, even though he did not completely adopt the doctor's assessment.

Additionally, although Dr. Dowell opined that plaintiff's club foot rendered him wholly disabled, there is not support otherwise in the record to support that opinion. Regarding Dr. Dowell's assessment that plaintiff was completely disabled due to the degeneration of his left and right ankles, the ALJ found that this opinion was conclusory, was outside of his expertise, and was created at plaintiff's request so that he could receive state-funded medical assistance.

Dr. Dowell opined that plaintiff needed an ankle fusion and that his ankle was beyond the point of repair; that he had severe degenerative arthritis in his left ankle; and that unless he had an ankle fusion, he would not be able to work. While plaintiff contends that the ALJ erred in the weight he gave to the consultative examiner's opinion, Dr. Ash, who assessed plaintiff with the same RFC as that assessed by the ALJ, the Court finds that the ALJ did not err in not

15

affording greater weight to Dr. Dowell's opinion.  Even plaintiff's own testimony does not suggest that he has as much impairment with his club feet as Dr. Dowell assessed.  Plaintiff admitted that no doctor had ever prescribed an assistive device, nor did he use a cane on his own.  He did not describe pain in his ankles or feet to the extent that he would be completely unable to walk, as suggested by Dr. Dowell when he stated that without an ankle fusion plaintiff would not be able two work because he could not ambulate on a regular basis.  Additionally, the ALJ's decision is supported by the fact that plaintiff's club foot problem is something that did not hamper him from working in the past, and further, it is apparent that the ALJ took this impairment into consideration because he limited him to sedentary work.

Based on the foregoing, the Court finds that there is substantial evidence in the record to support the ALJ's decision that plaintiff does not suffer from a disabling physical or mental impairment, and that he can perform limited sedentary unskilled work.  The ALJ's decision is supported by substantial evidence in the record.  Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006).   Further, plaintiff has failed to meet his burden of proving that he has an impairment that precludes him from engaging in substantial gainful activity.

Accordingly, the decision of the Secretary should be affirmed.

It is hereby

ORDERED that the decision of the Secretary should be, and it is hereby, affirmed.


       /s/ James C. England
      JAMES C. ENGLAND, CHIEF
     United States Magistrate Judge

Date:   9/24/09

16

Case 3:08-cv-05025-JCE   Document 14   Filed 09/24/09   Page 16 of 16